# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### February 22, 2012 Session

## JEFFREY KLOCKO v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court of Davidson County**
**No. 2004-B-961     J. Randall Wyatt, Judge**

---

**No. M2011-00219-CCA-R3-PC - Filed March 28, 2012**

---

Jeffrey Klocko ("the Petitioner") filed for post-conviction relief, challenging his convictions for aggravated sexual battery, sexual battery by an authority figure, and assault by offensive or provocative contact, which resulted in an effective sentence of thirteen years. As his basis for relief, he alleged numerous grounds of ineffective assistance of counsel. After an evidentiary hearing, the post-conviction court denied relief, and this appeal followed. On appeal, the Petitioner asserts that trial counsel failed to interview the Petitioner's therapist or mother and failed to call either of them at trial, resulting in ineffective assistance. Upon a thorough review of the record, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment**
**of the Criminal Court Affirmed**

JEFFREY S. BIVINS, J., delivered the opinion of the Court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

Cynthia M. Fort, Nashville, Tennessee, for the appellant, Jeffrey Klocko.

Robert E. Cooper, Jr., Attorney General & Reporter; Brent C. Cherry, Senior Counsel; Victor S. Johnson III, District Attorney General; Brian Holmgren, Assistant District Attorney General; for the appellee, State of Tennessee.

## OPINION

### Factual and Procedural Background

A Davidson County jury returned guilty verdicts against the Petitioner for three counts of aggravated sexual battery, six counts of sexual battery by an authority figure, and one count of assault by offensive or provocative contact. This Court stated the facts underlying the convictions as follows on direct appeal:

The victim, A.R., was born on September 3, 1989. When she was two or three years old, [the Petitioner] began dating A.R.'s mother, L.R. . . . L.R. married [the Petitioner] when A.R. was nine years old. . . .

When A.R. was eleven years old, [the Petitioner] began to run his hands down her back and grab her buttocks, over her clothes, when he would give A.R. a hug. . . . A.R. stated that these things occurred on an everyday basis. . . .

Sometime prior to her thirteenth birthday, [the Petitioner] also began touching A.R.'s breasts. . . .

. . . .

The touching continued after A.R.'s thirteenth birthday. One occasion occurred when A.R. was putting the dishes away. [The Petitioner] wrapped his arms around her from behind and grabbed her breasts with both of his hands. He also grabbed her buttocks from behind while the two were in the kitchen.

A.R. also remembered several incidents that happened in her bedroom. [The Petitioner] walked into A.R.'s bedroom while she was changing clothes, and he grabbed her buttocks. Eventually, [the Petitioner] began getting in bed with A.R. in the early morning before he left for work. He got into bed with her about once a week. On one occasion, [the Petitioner] got into bed with A.R. and began rubbing her buttocks over her clothes. Another time, [the Petitioner] got into bed with A.R. and put his hands inside A.R.'s pants and rubbed her buttocks under her clothes. He also would touch her breasts over and under her clothes when he got into bed with her. One time, A.R. had worn a bra to bed. [The Petitioner] put his hand under her shirt and inside her bra in order to fondle her breasts.

. . . .

A.R.'s mother stated that A.R. and [the Petitioner] had a good relationship until A.R. was between ten and twelve years old. Around that time, [the Petitioner] became verbally abusive towards A.R. and called her things such as "stupid," "bitch," "whore," and "worthless piece of crap." L.R. stated that [the Petitioner's] comments caused A.R. to lose confidence in herself. . . . L.R. also stated that [the Petitioner] often opened A.R.'s bedroom door when she was changing clothes.

L.R. saw [the Petitioner] touch A.R.'s buttocks when he hugged her. A.R. complained to L.R. that [the Petitioner] touched her buttocks, breasts and vaginal area. L.R. told [the Petitioner] to stop, but [the Petitioner] denied touching A.R.'s breasts or vaginal area. L.R. found [the Petitioner] in A.R.'s bed twice. He said he was drunk and disoriented. . . . Even though L.R. knew this information, she never reported [the Petitioner's] behavior to the police.

On September 29, 2003, shortly after A.R.'s fourteenth birthday, Gina Nicole Proffitt, A.R.'s volleyball coach[,] drove A.R. home after a volleyball game. While they were in the car, A.R. told Ms. Proffitt she did not want to go home. A.R. then told Ms. Proffitt that [the Petitioner] had been touching her inappropriately. Ms. Proffitt reported the information to the Department of Human Services.

State v. Jeffrey Mark Klocko, No. M2006-01359-CCA-R3-CD, 2008 WL 2743692, at *1-3 (Tenn. Crim. App. June 16, 2008), perm. app. denied, (Tenn. Dec. 22, 2008). The trial court sentenced the Petitioner to an effective sentence of fourteen years. The Petitioner appealed, and this Court affirmed the convictions but remanded for resentencing. Id. at *1. On remand, the trial court sentenced the Petitioner to an effective sentence of thirteen years.[1] The Petitioner subsequently filed the instant petition for post-conviction relief, alleging numerous grounds of ineffective assistance of counsel at trial.

At the post-conviction hearing, the Petitioner testified that he first met trial counsel around September of 2000, when he represented the Petitioner in an automobile accident case. From this accident, the Petitioner suffered a traumatic brain injury, and trial counsel successfully negotiated a settlement in the case. The settlement took place in October of 2003, which is, coincidentally, when the allegations arose that led to the Defendant's convictions. Thus, according to the Petitioner, trial counsel was aware of the Petitioner's injuries, medical records, and the fact that the Petitioner was seeing a therapist, Dr. Bonnie Lenihan. The Petitioner noted that, at the same time, he had a different attorney representing him in juvenile court for dependency and neglect proceedings but that trial counsel possessed the depositions and transcripts of those proceedings. According to the Petitioner, trial counsel also was aware of the Petitioner's interview with a detective regarding the allegations in this case. However, the Petitioner never conveyed to trial counsel that his brain injury made it difficult for him to communicate because trial counsel kept putting off meeting together before trial. The Petitioner provided names, addresses, and phone numbers of family members who could serve as potential witnesses at trial, but trial counsel never called

---

[1] The record does not indicate that the Petitioner filed any appeal from the resentencing.

-3-

them to testify. The Petitioner did not feel that he was able to convey clearly his theory of the case at trial and that trial counsel did not prepare him adequately to testify.

On cross-examination, the State asked the Petitioner what he felt he was not able to communicate at trial. He stated that he believed the State fed A.R. fabricated testimony to give on the witness stand. He also testified that A.R. started dating a boy and that the Petitioner believed that the two were having sex, so he told her that he did not want her spending time with this boy anymore. A.R. got very upset and "threatened" him, and "[t]wo days later, DCS was at [the Petitioner's] door." A.R. had visited her father's home in Ohio before the allegations surfaced but after the alleged events took place. According to the Petitioner, A.R.'s father later told A.R.'s mother that he and A.R. had planned the allegations in order "to get rid of" the Petitioner. Additionally, A.R. told him "that she started this and that she can stop it just like she started it." When asked why none of this information came out at the dependency and neglect proceeding, the Petitioner stated that, although his attorney knew about this information, "[his attorney] felt that it would be difficult to prove and that [A.R. would] probably deny it anyways."

The Petitioner also testified that, prior to trial, trial counsel did not inform him of the charges against him or of any potential plea offer. However, the Petitioner stated that even if he had received a plea offer, he still would have pled not guilty. He also felt that trial counsel failed to ask him the proper questions on direct examination to elicit the Petitioner's theory.

Carol Klocko, the Petitioner's mother, testified that she has known A.R. since A.R. was about six years old. A.R. regularly came to Michigan, where Klocko lives, for summer vacation. In 2003, the year that the allegations arose, A.R. was about thirteen years old. She came to Michigan that summer, and Klocko overheard A.R. telling her cousin, Sarah,[2] about "watching porn movies with [A.R.'s] brother in Ohio." Klocko then stated,

> Sarah was grounded by her parents for something that [A.R.] had done. But she insisted . . . that Sarah had done that. And Sarah was upset. And [A.R.] came to her and says [sic] to Sarah, when you go back to school, you tell your teachers your parents molested you and you can do anything you want. I looked at [A.R.] and I said to her, where did you learn that? And her answer was her school.

---

[2] The transcript does not provide a last name for A.R.'s cousin. Therefore, we will address her using her first name. We intend no disrespect.

After observing this dialogue, Klocko went to Sarah's parents and told them what A.R. said to their daughter. However, she did not remember ever telling the Petitioner about the things A.R. said. She maintained that, although she did not think trial counsel ever knew this information, she was available to be called as a witness at trial.

Dr. Bonnie Lenihan, a licensed clinical worker, testified that the Petitioner began coming to sessions on October 13, 2003, and attended approximately twenty sessions before incarceration. She understood the Petitioner to have two issues. One issue was the lingering presence of symptoms from a car crash three years prior, and the other issue was the accusation by his stepdaughter of inappropriate touching. Dr. Lenihan did not review the Petitioner's medical records, but the Petitioner informed her that he had been diagnosed with a traumatic brain injury. She observed,

> Well, he was under stress, which was most of the time I saw him. When he was trying to speak, the symptoms from the brain injury would emerge and he would have poor retrieval of memory, difficulty finding his words, difficulty finishing a thought. It was seemingly impossible for him to have organized his thoughts. And so he would kind of talk in circles and be kind of hard to follow.

In each session, the Petitioner was "consistently bewildered" that the victim had accused him of these allegations.[3]

On "more than one occasion," Dr. Lenihan informed the Petitioner that she was willing to speak with his attorneys because she anticipated that the Petitioner likely would be hard to follow. Dr. Lenihan stated, "[a]s hard as he tried, [the Petitioner] could not figure out why [A.R.] would say such things about him." However, on cross-examination, she admitted that the Petitioner had told her that he surmised the allegations stemmed from his confrontation with A.R. about her sexual relations with an older boy. Dr. Lenihan never met with trial counsel until after the Petitioner's convictions. She met with the Petitioner at least a dozen times after he was incarcerated, but she admitted that these meetings were not technically therapy sessions.

---

[3] At oral argument, counsel for the Petitioner contended that Dr. Lenihan's basic conclusion was that the character of the Petitioner's brain injury made it impossible for him to maintain a story based upon lies. However, a review of the transcript from the post-conviction hearing reveals that the State objected to this particular testimony, and the trial court sustained the objection. The Petitioner has not raised the exclusion of this testimony as error in this appeal. Therefore, we do not consider this opinion offered by Dr. Lenihan in reaching our decision in this case.

Trial counsel testified that he had known the Petitioner through a mutual acquaintance several years before ever representing him. He was aware of the Petitioner's injuries from the car accident and represented him in negotiating a settlement award for the Petitioner. In preparation for trial, trial counsel possessed A.R.'s deposition and testimony from the juvenile proceeding. His defense theory revolved around the question of why A.R. did not tell her father about the alleged incidents when she was with him during the summer of 2003, and the possibility that she made up the allegations to get out from under the Petitioner's parental control. However, trial counsel believed that it was unfavorable to the Petitioner's case that A.R. did not discuss any of the allegations until questioned by her coach.

Trial counsel stated that he had tried at least a dozen child sex abuse cases. His procedure before any trial was to review with a fact witness exactly what questions would be asked and hear what the particular witness's testimony would be. He confirmed that, in this case, he reviewed his direct examination with the Petitioner prior to trial.

At trial, the Petitioner informed trial counsel that Klocko might have information that would aid in his defense. Trial counsel spoke with Klocko in the hallway of the courthouse, but he did not feel that the information she gave him would be helpful at trial. In fact, he believed it might be hurtful to the defense to subject her to cross-examination. He stated that Klocko never gave him the information to which she testified at the post-conviction hearing regarding the victim, and had she given him such information, he would have called her to testify at trial.

Trial counsel testified that he has dealt with several traumatic brain injury cases, and that proving these injuries required expert witnesses. He explained the difficulty in proving a traumatic brain injury, given the fact that such an injury does not appear on tests such as CAT scans or MRI's. Therefore, trial counsel decided that in defending the Petitioner in these charges he would not attempt to prove the Petitioner's traumatic brain injury. He believed that the jury might see it as a sideshow detracting from the real issues in the case and that the sole benefit of such testimony would be to help rehabilitate the Petitioner from an unfavorable cross-examination. In trial counsel's opinion, the Petitioner was able to convey himself adequately on the witness stand.

In its written order, the post-conviction court credited trial counsel's testimony that he reviewed his direct examination with the Petitioner prior to trial. Additionally, the court found that trial counsel "made a strategic choice in not calling the [sic] Dr. Lenihan to testify at trial due to the reasons that diminished capacity would have been difficult to prove and the additional consideration that the jury would perceive it as a defense tactic to divert from the main issues." Although the post-conviction court found that Klocko might have had beneficial information, it credited trial counsel's testimony that he never obtained such

information. Further, the court found that trial counsel reviewed A.R.'s transcript and deposition from the juvenile proceedings and utilized them at trial. The post-conviction court determined that none of the allegations by the Petitioner rose to a level of ineffective assistance of trial counsel. Moreover, according to the post-conviction court, even if trial counsel's actions were somehow deficient, the Petitioner suffered no prejudice. Thus, the post-conviction court denied relief, and the Petitioner appealed.

On appeal, the Petitioner's grounds for ineffective assistance of counsel are that trial counsel failed to interview either Dr. Lenihan or Klocko and failed to call them to testify at the Petitioner's trial.

## **Analysis**

### *Standard of Review*

Relief pursuant to a post-conviction proceeding is available only where the petitioner demonstrates that his or her "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103 (2006). To prevail on a post-conviction claim of a constitutional violation, the petitioner must prove his or her allegations of fact by "clear and convincing evidence." Tenn. Code Ann. § 40-30-110(f) (2006). See Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999). This Court will not overturn "a post-conviction court's findings of fact unless the preponderance of the evidence is otherwise." Pylant v. State, 263 S.W.3d 854, 867 (Tenn. 2008); Sexton v. State, 151 S.W.3d 525, 531 (Tenn. Crim. App. 2004). We will defer to the post-conviction court's findings with respect to the witnesses' credibility, the weight and value of their testimony, and the resolution of factual issues presented by the evidence. Momon, 18 S.W.3d at 156. With respect to issues raising mixed questions of law and fact, however, including claims of ineffective assistance of counsel, our review is de novo with no presumption of correctness. See Pylant, 263 S.W.3d at 867-68; Sexton, 151 S.W.3d at 531.

### *Ineffective Assistance of Counsel*

The Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution guarantee a criminal defendant the right to representation by counsel at trial.[4] Both the United States Supreme Court and the Tennessee Supreme Court have

---

[4] The Sixth Amendment right to counsel is applicable to the States through the Fourteenth Amendment to the United States Constitution. See Gideon v. Wainwright, 372 U.S. 335, 342 (1963); State v. Howell, 868 S.W.2d 238, 251 (Tenn. 1993).

recognized that this right is to "reasonably effective" assistance, which is assistance that falls "within the range of competence demanded of attorneys in criminal cases." Strickland v. Washington, 466 U.S. 668, 687 (1984); see also Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). The deprivation of effective assistance of counsel at trial presents a claim cognizable under Tennessee's Post-Conviction Procedure Act. See Tenn. Code Ann. § 40-30-103; Pylant, 263 S.W.3d at 868.

In order to prevail on a claim of ineffective assistance of counsel, the petitioner must establish two prongs: (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. See Strickland, 466 U.S. at 687; Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996). The petitioner's failure to establish either prong is fatal to his or her claim of ineffective assistance of counsel. Goad, 938 S.W.2d at 370. Accordingly, if we determine that either prong is not satisfied, we need not consider the other prong. Id.

To establish the first prong of deficient performance, the petitioner must demonstrate that his lawyer's "acts or omissions were so serious as to fall below an objective standard of 'reasonableness under prevailing professional norms.'" Vaughn v. State, 202 S.W.3d 106, 116 (Tenn. 2006) (quoting Strickland, 466 U.S. at 688)). Our Supreme Court has explained that:

> [T]he assistance of counsel required under the Sixth Amendment is counsel reasonably likely to render and rendering reasonably effective assistance. It is a violation of this standard for defense counsel to deprive a criminal defendant of a substantial defense by his own ineffectiveness or incompetence. Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations.

Baxter, 523 S.W.2d at 934-35 (quoting Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974)). When a court reviews a lawyer's performance, it "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." Howell v. State, 185 S.W.3d 319, 326 (Tenn. 2006) (citing Strickland, 466 U.S. at 689). Additionally, a reviewing court "must be highly deferential and 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" State v. Honeycutt, 54 S.W.3d 762, 767 (Tenn. 2001) (quoting Strickland, 466 U.S. at 689). We will not deem counsel to have been ineffective merely because a different strategy or procedure might have produced a more favorable result. Rhoden v. State, 816 S.W.2d 56, 60 (Tenn. Crim. App. 1991). We recognize, however, that "deference to tactical choices only applies if the choices are informed ones based upon adequate preparation."

Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992) (citing Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982)).

As to the prejudice prong, the petitioner must establish a "reasonable probability that but for counsel's errors the result of the proceeding would have been different." Vaughn, 202 S.W.3d at 116 (citing Strickland, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. "That is, the petitioner must establish that his counsel's deficient performance was of such a degree that it deprived him of a fair trial and called into question the reliability of the outcome." Pylant, 263 S.W.3d at 869 (citing State v. Burns, 6 S.W.3d 453, 463 (Tenn. 1999)). "A reasonable probability of being found guilty of a lesser charge . . . satisfies the second prong of Strickland." Id.

### Trial Counsel's Effectiveness Regarding Dr. Lenihan

The Petitioner's first contention is that trial counsel was deficient in not speaking with Dr. Lenihan prior to trial and not calling her to testify regarding the Petitioner's traumatic brain injury. The State responds that trial counsel's decision not to call Dr. Lenihan was based on a well-reasoned trial strategy.

As to the deficiency prong, the Petitioner testified at the post-conviction hearing that he suffered from a traumatic brain injury. Due to this injury, he had difficulty conveying his thoughts. Although he stated that trial counsel was aware of the injury, the Petitioner never told trial counsel about this communication difficulty. Dr. Lenihan testified that she was concerned that it might be hard for the Petitioner to communicate, so she offered to the Petitioner more than once to speak with his attorneys. She stated that, despite the injury that caused him to "talk in circles," the Petitioner was "consistently bewildered" by A.R.'s allegations. Trial counsel testified that he was aware of the Petitioner's traumatic brain injury, and he previously had proven such an injury in civil cases. However, he decided not to attempt to prove the Petitioner's injury because of the difficulty in doing so and the concern that the jury might see it as a distraction from the main issues in the case. Trial counsel also stated that he had ample contact with the Petitioner and never had an issue communicating with the Petitioner.

The post-conviction court found that trial counsel "made a strategic choice in not calling the [sic] Dr. Lenihan to testify at trial due to the reasons that diminished capacity would have been difficult to prove and the additional consideration that the jury would perceive it as a defense tactic to divert from the main issues." The Petitioner has failed to show by clear and convincing evidence that such a decision by trial counsel was deficient. Moreover, Dr. Lenihan's testimony at the post-conviction proceeding never addressed the

Petitioner's actual trial testimony. As a result, her testimony cannot establish how the Petitioner was prejudiced by the failure of trial counsel to call Dr. Lenihan as a witness. Accordingly, the Petitioner is entitled to no relief on this issue.

<u>Trial Counsel's Effectiveness Regarding Ms. Klocko</u>

The Petitioner's second assertion is that trial counsel failed to adequately interview Klocko and was deficient by not calling her to testify at trial. Specifically, the Petitioner relies on trial counsel's acknowledgment that, had trial counsel known the information about which Klocko testified at the post-conviction hearing, he would have called her as a witness at trial. The State's response is that trial counsel never knew of the information Klocko possessed that might have been beneficial to the Petitioner's defense, even though trial counsel spoke with her during the trial.

Turning to the deficiency prong, Klocko testified at the post-conviction hearing that she heard A.R. tell her cousin, "when you get back to school, you tell your teachers your parents molested you and you can do anything you want." The trial court credited trial counsel's testimony that Klocko never told him about this conversation when they spoke during the trial. Moreover, trial counsel testified that, based on what Klocko actually told him at trial, he believed that calling Klocko as a witness potentially would be detrimental to the Petitioner's defense. Thus, we agree with the trial court that the Petitioner has failed to show by clear and convincing evidence that trial counsel's decision not to call Klocko at trial was deficient. Therefore, we need not address whether trial counsel's actions prejudiced the Petitioner. Accordingly, we hold that the Petitioner is not entitled to relief on this issue.

**Conclusion**

For the foregoing reasons, the Petitioner has failed to establish that he is entitled to post-conviction relief. Therefore, we affirm the judgment of the post-conviction court denying relief.

_____
JEFFREY S. BIVINS, JUDGE

-10-